

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EARL L. ROSS, JR.,

    Plaintiff,

v.                             Civil Action No. 3:15cv566

DEVIN LEE
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF EARL L. ROSS, JR.'S MOTION TO REMAND AND OBJECTION TO DEFENDANT'S NOTICE OF REMOVAL (Docket No. 7). For the reasons stated below, the motion to remand will be granted, and the case remanded to the Circuit Court for the City of Richmond. In light of this ruling, DEFENDANT HARBOR FREIGHT TOOLS USA, INC'S MOTION TO DISMISS (Docket No. 5) will be denied as moot.

## BACKGROUND

Ross's suit is a slip-and-fall premises liability case. The state court complaint alleges that Harbor Freight contracted with St. Moritz Security Service to provide security at the Harbor Freight store in question, and that St. Moritz subcontracted with Ross's employer, Patriot Protective Services, which placed Ross in the store on the day of the incident.

(Docket No. 1, Ex. 3, ¶ 6) ("Complaint"). Devin Lee ("Lee") was the on-duty supervisor of the store when the accident occurred. (Complaint ¶ 2). Ross's original complaint alleged that, while performing a security check, Ross slipped and fell on a slippery substance on the floor and suffered injury. (Complaint ¶ 7, 16). Ross (a Virginia resident) filed this action in the Circuit Court of the City of Richmond against both Harbor Freight (a Delaware corporation with its primary place of business in California) and Lee (a Virginia resident) seeking $100,000 in damages. (Notice of Removal ¶¶ 1-5).

Harbor Freight, in its Notice of Removal, argued that Ross has no state law claim against Lee because, under Virginia law, premises liability duties are typically owed only by the landlord or owner, not by an employee. (Notice of Removal, Docket No. 1, ¶¶ 15-18) (relying on Harris v. Morrison, Inc., 32 Va. Cir. 298, 298-99 (1993)). An employee is only liable when the employee "personally caused the accident or committed any affirmative act which contributed to the accident." (Notice of Removal ¶¶ 15-18) (quoting Harris, 32 Va. Cir. at 298-99). Defendants accordingly removed on the basis of diversity jurisdiction, asserting that non-diverse defendant Lee was fraudulently joined because Ross has no plausible state law claim against Lee. (Notice of Removal ¶ 5, 11).

2

Ross, in his Motion to Remand, contested the fraudulent joinder allegation and provided an affidavit swearing additional facts tending to show that Lee took the sort of affirmative action that establishes employee liability.

> On the date of the incident, Defendant Lee placed a leaking generator in a shopping cart, knowing it was leaking. Pl. Aff. ¶ 7. Defendant Lee then moved the shopping cart with the leaking generator to the back of the store, knowing that the generator was leaking and that it continued to leak. Pl. Aff. ¶¶ 8-9. Defendant Lee knew that the leaking generator was located in an area where the security personnel … regularly travelled … Pl. Aff. ¶ 9 … After Mr. Ross fell on the substance leaking from the generator, Defendant Lee remarked that she had planned to get the oil spill up but had not yet done so … Pl. Aff. ¶ 10.

(Pl.'s Mtn. to Remand 2).

The crux of the remand decision is whether Ross has stated a valid state law claim against the non-diverse defendant, Lee, or whether, instead, he is a fraudulently joined party whose citizenship may be disregarded for purposes of analyzing diversity of citizenship.

**ANALYSIS**

**A. Timely Removal**

Harbor Freight was served on August 18, 2015, and filed its Notice of Removal on September 17, 2015. (Def.'s Notice of

3

Removal ¶ 23). The Notice of Removal was accordingly timely filed under § 1446(b)(1).

The Court notes, however, that Ross filed his action in state court on August 22, 2014 (Def.'s Notice of Removal, Ex. 3, 2), such that more than one year elapsed between filing and removal. This still leaves the Court with a potential § 1446(c)(1) issue.

> A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

§ 28 U.S.C. 1446(c)(1). Subsection (b)(3) states that

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

A federal court looks to the law of the forum state to determine when a suit "commences." E.g., Lindsey v. Highwoods Realty Ltd. P'ship, No. 3:11CV447-HEH, 2011 WL 4434892 (E.D. Va. Sept. 22, 2011) (Hudson, J.); Lexington Mkt., Inc. v. Desman Associates, 598 F. Supp. 2d 707, 710 (D. Md. 2009); US Airways,

Inc. v. PMA Capital Ins. Co., 340 F. Supp. 2d 699, 703 and 703 n.4 (E.D. Va. 2004) (noting that, although the Fourth Circuit has not issued a decision on point, other circuit courts, as well as districts within the Fourth Circuit, embrace the notion that the state definition of "commences" controls). In Virginia, a suit "commences" when the Plaintiff files his complaint, not when the Defendant receives service. E.g., US Airways, Inc. 340 F. Supp. 2d at 703; see also **Va. Sup. Ct. R.** 3:2(a) ("A civil action shall be commenced by filing a complaint in the clerk's office").

Virginia also allows a plaintiff to wait up to a year to serve a defendant. **Va. Sup. Ct. R.** 3:5(e). The interplay between Virginia rules and § 1446 allows a plaintiff to run out the clock on the absolute one-year limit of § 1446, beyond which the original pleading is not removable when commenced.

However, the absolute one-year limit on removal appears to only apply to cases that are not removable when commenced. Although the Fourth Circuit has not definitively addressed this issue, district courts in the Fourth Circuit have concluded that the one-year limit only applies to cases that are not initially removable when commenced, e.g., to cases in which a non-diverse defendant is only dismissed after several months of litigation. Lindsey, 2011 WL 4434892 at *3-5 (collecting cases and

discussing how the policy rationales underlying the one-year absolute limit does not apply to cases which are removable from the outset).[1] In Lindsey, Judge Hudson concluded that, "by properly ignoring the fictitiously named John Doe, this case was removable at the time of commencement," and was not subject to the absolute one-year bar. Lindsey, 2011 WL 4434892, at *5. In this case, by analogy, it could be said that, "by properly ignoring the improperly joined Devin Lee, the case was removable at the time of commencement," such that the case is not subject to the one-year bar.

The one-year rule does not apply to this case because the case was removable from the start. Therefore, Defendant has cleared the timing hurdle set in § 1446.

B.  **Legal Standard For Remand**

An action is properly removed to this Court for diversity of citizenship if the amount in controversy exceeds $75,000 and the parties are citizens of different States. 28 U.S.C. § 1332(a)(1). "Removal of civil cases to federal court is an infringement on state sovereignty." Adams v. Aero Servs. Int'l, Inc., 657 F. Supp. 519, 521 (E.D. Va. 1987). Therefore, "[t]he

---

[1] Lindsey dealt with § 1446 before its most recent revision, when the one-year rule was still at § 1446(b) instead of § 1446(c), and there was no bad faith exception. The revision does not invalidate Lindsey.

6

burden of demonstrating jurisdiction resides with 'the party seeking removal.'" Barbour v. Int'l Union, 594 F.3d 315, 326 (4th Cir.2010) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). As a result of the "undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction," "a party seeking to adjudicate a matter in federal court must allege, and when challenged must demonstrate, the federal court's jurisdiction over the matter." Strawn v. AT & T Mobility, LLC, 530 F.3d 293, 296 (4th Cir. 2008). Although a defendant is only required to allege federal jurisdiction in his notice of removal, "when removal is challenged, the removing party bear[s] the burden of demonstrating that removal jurisdiction is proper." Strawn, 530 F.3d at 297 (emphasis in original). However, "this burden is no greater than is required to establish federal jurisdiction as alleged in a complaint." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008). Nevertheless, "if federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151.

To establish that a defendant has been fraudulently joined, the removing party must prove either that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court"

or that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993); see also Beaudoin v. Sites, 886 F. Supp. 1300, 1302 (E.D. Va. 1995). Where, as here, the removing party argues that there is no possibility that the plaintiff will be able to state a claim against the non-diverse defendant,

> [t]he burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.

Marshall, 6 F.3d at 232-33.

When fraudulent joinder is at issue, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.' " AIDS Counseling & Testing Centers v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (citation omitted). "[T]he defendants may submit affidavits and deposition transcripts; and ... the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). In this respect, the "proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a

8

motion for summary judgment under Fed. R. Civ. P., Rule 56(b)." Id. at 549, n. 9. The court must rule in favor of the plaintiff if there is "any reasonable possibility that a state court would rule against the non-diverse defendant. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992).

Moreover, although federal courts are courts of limited jurisdiction and should not make merits determinations where they ultimately have no jurisdiction, courts must sometimes make merits determinations in order to resolve the existence of jurisdiction. Montez v. Dep't of Navy, 392 F.3d 147, 149-50 (5th Cir. 2004) ("where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.")

C. **Lee's Liability At State Law**

As this Court has held previously,

> [u]nder Virginia law, an employee of the owner or operator of the premises in an action based on standard premises liability theories may be held liable only for affirmative acts of negligence, not merely because, in the status of employee of the owner or operator, he or she is guilty of an omission.

Beaudoin, 886 F. Supp. at 1302-04 (collecting Virginia cases); see also, e.g., Logan v. Boddie-Noell Enterprises, Inc., 834 F. Supp. 2d 484, 489 (W.D. Va. 2011); Dixon v. S. Boston Corp., 69

9

Va. Cir. 313 (2005). Stated another way, "[a]n employee may be liable for his own misfeasance (i.e., performance of an affirmative act done improperly, but not for his own nonfeasance (ie., omission to do some act which ought to be performed)." Beaudoin, 886 F. SUpp. at 1302-03 (citing Harris v. Morrison, Inc., 32 Va. Cir. 298, 298-99 (1993)). In light of Ross's affidavit alleging that Lee moved the leaking generator across the store, leaking oil along the way, the viability of Ross's claim against Lee (and the viability of Ross's motion to remand) turns on whether Lee moving the generator constitutes an affirmative act of negligence.

Harbor Freight makes three arguments as to Lee's liability: (1) that Lee's "failure to remedy" the spill is not an affirmative act of negligence under Harris and Beaudoin; (2) that Lee did not take an affirmative act to cause the hazard; and (3) any affirmative act by Lee was a means of doing business mandated by Harbor Freight which cannot support a cause of action against Lee individually. (Def.'s Opp. to Mtn. to Remand 5-9).

To support the first theory, Harbor Freight states that Lee's awareness of the spill, even coupled with failure to warn or failure to remedy, is not an affirmative action that would give rise to individual liability under Harris and Beaudoin.

10

(Def.'s Opp. to Mtn. to Remand, Docket No. 10, 6). Harbor Freight accurately restates the law, but the recitation does not suit the facts alleged in this case. Ross does not merely allege that Lee knew about the hazard that caused his injuries. Instead, Ross alleges that Lee took affirmative physical action in moving a leaking generator across the store, physically creating the spill. Lee's actions in allegedly moving the leaking generator were unquestionably an affirmative act, that cannot accurately be characterized as mere knowledge coupled with failure to warn or remedy.

To support the second theory, Harbor Freight states that:

> plaintiff's affidavit does not actually allege that Lee created the dangerous condition <u>per se</u> - i.e. it does not allege that she dumped oil on the floor or took some other affirmative act to cause the generator to leak oil and create the alleged hazard. Instead, plaintiff alleges only that a leaking generator was returned … that Lee placed it in a shopping cart … knowing that it leaked, and that … Lee moved the shopping cart … where oil from the leaking generator eventually created the alleged spill.

(Def.'s Opp. to Mtn. to Remand 7). According to Harbor Freight, Lee's conduct is best described as a failure to act to remedy some unidentified party's negligence in causing the generator to leak.

There are two significant problems with this assertion. First, the law of negligence does not require that Lee must be

11

the architect of the entire string of misfortunes that ultimately led to Ross slipping in the puddle, merely that Lee must be the proximate and legal cause of Ross slipping in the puddle. E.g., Cannon v. Clarke, 209 Va. 708, 711 (1969). Thus, it is irrelevant whether Lee caused the generator to leak or failed to act to stop the generator from leaking; the issue is whether Lee caused the puddle to form. Taking Ross's allegations as true, Lee did cause the puddle to form. Second, characterizing Lee's conduct as failure to stop the generator from leaking is a rather contorted interpretation of "affirmative act." Lee did not merely fail to stop the generator from leaking; if she had merely failed to stop the generator from leaking, the puddle would have coalesced at the front of the store. Instead, Lee moved the leaking generator, an affirmative action which created the puddle in the middle of the store.

The third theory has two sub-theories, each of which requires a more in-depth analysis than the previous two.

As to the first sub-theory, Harbor Freight relies on Winn-Dixie Stores, Inc. v. Parker, 240 Va. 180, 183 (1990) for the proposition that premises liability does not arise where it is reasonably foreseeable that a dangerous condition is merely created by, or might arise from, the means used to exhibit

12

commodities for sale, and a patron is harmed as a consequence. Winn-Dixie Stores, Inc., 240 Va. at 183-84 (disagreeing with the Fourth Circuit's prediction of state law in Thomason v. Great Atl. & Pac. Tea Co., 413 F.2d 51 (4th Cir. 1969)); see also Rodgers v. Food Lion, Inc., 103 F.3d 119 (4th Cir. 1996) (recognizing the Virginia Supreme Court's abrogation of Thomason). Harbor Freight thus argues that Lee's knowledge that the generator was leaking and her movement of the generator, when it was foreseeable that liquid would leak during the moving process, is the same as the liability argument raised in Winn-Dixie. (Def.'s Opp. to Mtn. to Remand 7).

In Winn-Dixie, the plaintiff asserted that: (1) defendant displayed snap beans in a loose, sloping bin; (2) defendant's employee swept the floor in the area around the snap beans at some identified point prior to plaintiff's fall; and (3) plaintiff slipped and fell on a snap bean. Winn-Dixie, 240 Va. 180-82. On this basis - and without providing any evidence that the defendant, rather than any customer, caused the bean in question to fall on the floor - plaintiff argued that defendant had been negligent in either its method of displaying the beans or in sweeping the floor. Winn-Dixie, 240 Va. 183. Contrary to Harbor Freight's characterization of the decision in Winn-Dixie, the Supreme Court of Virginia did not actually disagree with the

13

notion that stores have a duty to avoid business methods that present a foreseeable risk of injury. Rather, the Supreme Court of Virginia found in the store's favor because the plaintiff could not demonstrate that the store caused the bean to fall on the floor.

> Nothing in the record even suggests that anyone connected with Winn-Dixie placed the bean on the floor, and it is not "obvious" from any evidence in the case that [the store employee] missed the bean when he mopped through the produce section. Nor could the jury have inferred that Hall must have missed the bean simply because it was present on the floor when Parker fell. To countenance such an inference would ignore the likelihood that the bean found its way to the spot where Parker fell as the result of some action taken by another customer after Hall finished mopping the produce section.
>
> <u>Because Parker failed to establish that Winn-Dixie placed the bean on the floor</u> or that Hall missed it during his mopping, it became Parker's burden to prove that Winn-Dixie had either actual or constructive notice of the bean's presence and failed to remove it ....
>
> There is no evidence in this case that [Winn-Dixie] knew of the presence of the [bean] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [Parker] struck it as it is to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it .... We hold that Parker failed to make out a

>     prima facie case of negligence against Winn-Dixie.

Winn-Dixie, 240 Va. at 184 (emphasis added). Similarly, in Beaudoin this Court rejected a negligence claim where a store employee "negligently placed the plant at a location … where it was reasonably foreseeable that its vines would fall onto the path of customers, thereby presenting the risk of injury." Beaudoin, 886 F. Supp. at 1304 (relying on Winn-Dixie, 396 Va. at 180).

Lee's actions can be distinguished from both Winn-Dixie and Beaudoin because Lee did not merely create a situation where an intervening force (other patrons knocking beans onto the floor, vines growing vines onto or other patrons knocking vines onto the floor) _might foreseeably_ create a hazard. Instead, if Ross's allegations are accepted as true, then Lee's actions _directly created_ the hazard because she knowingly carried a leaking generator across the store, and knew that it had, in fact, leaked and created the hazard. (Def.'s Opp. to Mtn. to Remand 7). Thus, neither Winn-Dixie nor Beaudoin support the point being made by Harbor Freight.

As to the second sub-theory, Harbor Freight alleges that Lee's actions in moving the returned merchandise from the front of the store to the back of the store was a method of handling returned merchandise prescribed by Harbor Freight. Specifically,

> [P]laintiff has specifically alleged that Harbor Freight, not Lee, dictated the location where the cart with the returned merchandise should be kept .... "The state court could not reasonably find [Lee] liable on a method-theory of liability where the method to be used was prescribed by [Harbor Freight], not [Lee]."

(Def.'s Opp. to Mtn. to Remand 9) (relying on Beaudoin, 886 F. Supp. at 1305 n.3).

In Beaudoin, this Court noted that the employee in question had no discretion over where to place the plant whose vines eventually found their way to the floor, causing plaintiff's slip-and-fall. Beaudoin, 886 F. Supp. at 1305 n.3. But Beaudoin is not so broad as Harbor Freight believes. First, as noted above, in alleging that Lee directly created the hazard, Ross is not relying on the "method theory," which would only apply if Lee created a situation where a third party might have created the hazard. Second, Beaudoin only prohibits employee liability where the employee's action was prescribed by the owner. While Ross's affidavit does establish that company policy required Lee to move merchandise from the front of the store to the back of the store in a shopping cart, it does not show that company policy banned Lee from taking appropriate safety precautions while carrying out the company policy of moving returned merchandise from the front of the store to the back of the store. While the owner in Beaudoin required employees to use a

16

method that necessarily created the situation in which third parties could create the hazard, Harbor Freight did not require Lee to spill liquid on the store floor.

In sum, Lee's actions are distinguishable from Winn-Dixie and Beaudoin because: (1) Lee directly created the hazard, rather than creating a situation where a third party might have created the hazard; and (2) Lee's creation of the hazard was not mandated by Harbor Freight. Lee took exactly the sort of affirmative act of negligence which, if proven as alleged, gives rise to employee premises liability.

## CONCLUSION

Ross has stated a claim upon which relief may be granted against Lee, such that Harbor Freight has not proven fraudulent joinder. Absent fraudulent joinder, there is not complete diversity in this case, and removal was inappropriate. Plaintiff's MOTION TO REMAND (Docket No. 7) will be granted. This case will be remanded to the Circuit Court for the City of Richmond. In light of this order, DEFENDANT HARBOR FREIGHT TOOLS USA, INC.' MOTION TO DISMISS (Docket No. 5) is denied as moot.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 5, 2016

17